**Errol Trent ECBY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–91–00741–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 29, 1992.

John Zgourides, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Karen A. Clark, Craig Goodhart, Asst. Dist. Attys., Houston, for appellee.

Before DUNN, DUGGAN and MIRABAL, JJ.

## OPINION

DUNN, Justice.

Errol Trent Ecby appeals his conviction of aggravated robbery. Appellant plead true to the enhancement paragraph, and the jury assessed a punishment of 30-years confinement. In his sole point of error, appellant complains that the trial court abused its discretion in admitting, during the guilt/innocence phase of the trial, his Texas Department of Corrections (TDC) identification card because it showed prior criminal misconduct. We reverse and remand.

On March 20, 1991, at about 9:30 p.m., appellant and another male allegedly robbed a convenience store of six cartons of cigarettes, chips, and dip—worth between $160 and 170. A gun was used during the robbery; however, no one was injured. Although there is no video of the robbery because the store's video camera was not operating, the store's clerk was able to give police a description of both the vehicle and the robbers.

The store clerk described the robbers to the police as two black men; one 5'6" to 5'7", medium build, light-skinned with a gold tooth, and the other as having darker skin and very short hair. The police also recovered a quart-sized, Old Milwaukee Best beer bottle left at the scene by one of the robbers. The police lifted the fingerprints from this bottle and were able to identify one print as belonging to appellant.

Very early the next morning, the police located a car matching the description of the get-away car given by the store clerk. The automobile was stopped, and the deputy sheriff determined that none of the three occupants matched the description of either of the suspected robbers. Nevertheless, as the sheriff believed this vehicle had been involved in the robbery, he asked the occupants if they would agree to travel with him to the convenience store and also permit him to search the car for weapons. They agreed. It was during this search that he found appellant's TDC identification card, State's exhibit three, in the glove compartment. None of the occupants were identified by the store clerk as being involved in the robbery.

The next day the store clerk looked at a photo lineup, which included a 1988 photo of appellant; however, she was unable to identify him as one of the robbers. The detective conducting the lineup noted that appellant's current appearance was substantially different from that in the 1988 photo. The detective also testified that appellant did not have a gold tooth as described by the store clerk. When the clerk could not identify appellant from the 1988 photo, the detective then had the photo from the TDC card reproduced and included it in another photo lineup. The store clerk identified appellant as the robber with the weapon from this lineup.

Prior to trial, appellant's counsel presented a motion in limine seeking exclusion or redaction of the TDC identification card. Counsel argued that if the court admitted the card, then all references to the card as a Texas Department of Criminal Justice identification card should be removed prior to showing it to the jury. Appellant also filed a second motion in limine dealing with extraneous offenses and prior convictions arguing that the prejudicial value substantially outweighed the probative value of this evidence. Counsel argued the motions before the trial judge, and the court denied the first motion in limine and granted the second. At trial, over objection, the unredacted identification card was introduced as State's exhibit three.

After the identification card was admitted, the prosecutor asked the sponsoring witness the following questions:

Prosecutor: Deputy, would you please take a look at that card and tell the members of the jury what it is?

Witness: Texas Department of Corrections inmate identification card.

Prosecutor: What is the Texas Department of Corrections?

Witness: It's a prison.

Prosecutor: Penitentiary?

Witness: Right.

Prosecutor: Who is that card for?

Witness: Errol Trent Ecby.

Later, during closing arguments, the prosecutor argued to the jury:

> He [the deputy] does a search and finds a black wallet in the glove compartment that has a card that says, Texas Department of Corrections Inmate, Errol Trent Ecby. Take a look at the picture on there. Take a look at his face. Remember his face. Take his card back there and look at it. . . . You've got to ask yourself the question: What does a guy's inmate card have to do with fingerprints on [the] side of the bottle that's found at the scene? What they're doing is he's an inmate out on the streets holding up convenience stores. That's what it is.
>
> It's the same thing that's been going on in our community. The defense lawyer says you are not supposed to take it out on this one for all the crime in the neighborhood. I agree with him 100 percent. I'm not asking you to do that. Save your sympathies for the punishment phase—your feelings for the punishment phase one way or the other. Guilt or innocence stage is the only thing you are concerned with right now.

Appellant's counsel objected to the prosecutor's argument, and the jury was instructed to disregard. The court also instructed the jury in its charge that they were not to consider evidence of extraneous offenses as evidence of guilt.

Appellant complains that the admission of and the testimony about the identification card improperly presented evidence of appellant's prior misconduct. If we find that there was no abuse of discretion, we are to uphold the court's ruling. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim.App.1990).

The initial question is whether the trial court abused its discretion in admitting the evidence. This requires us to look at whether the evidence was relevant and, if relevant, whether the prejudicial nature substantially outweighed the probative value, and also whether the evidence was relevant for some other purpose other than conformity. *Montgomery*, 810 S.W.2d at 375–76; Tex.R.Crim.Evid. 403.

In this case, the State claims that the evidence is relevant because the identity of the alleged robber and his participation in the robbery were elements it was required to prove. The State maintains that the TDC card was also relevant to prove appellant's participation in the robbery of the convenience store because it placed him in the get-away car. The State notes that it attempted to obtain the clerk's identification of appellant using the 1988 photograph on file, but was unsuccessful. It was not until the photo from the TDC card was used in the lineup that the clerk made a positive identification.

Appellant's cross-examination of the store clerk focused on her description of the robber, her failure to identify appellant from the first photo lineup, and the discrepancy with the gold tooth. The gold tooth was a material detail of her identification. The disparity between appellant's appearance and the clerk's description was again highlighted during appellant's closing argument.

Appellant's counsel argued two motions in limine before the trial and timely objected to the introduction of the TDC identification card. The objections were specific enough to apprise the trial court of his complaint, including an objection as to prejudice. *Montgomery*, 810 S.W.2d at 387. We note that "reference by a witness to a defendant's prior incarceration in the penitentiary ... oftentimes colloquially referred to as 'TDC,' is improper because it violates the longstanding general rule which prohibits the introduction of collateral offenses and transactions." *Fuller v. State*, 827 S.W.2d 919, 927 (Tex.Crim.App. 1992), *petition for cert. filed*, —— U.S.L.W. —— (U.S. July 23, 1992) (No. 91–8768) (citing *Tennard v. State*, 802 S.W.2d 678, 685 (Tex.Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991)). Because these objections were before the court, the State then had to satisfy the trial court that the evidence that included the other crime, wrong, or act had a relevance apart from its tendency to prove character of a person in order to show he acted in conformity therewith. Tex.R.Crim. Evid. 404(b). Without this separate rele-

vance, the evidence is inadmissible. *Escobar v. State*, 825 S.W.2d 254, 256 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). However, if the evidence establishes an element of the crime charged, it may be sufficient to give the evidence additional relevance. *Montgomery*, 810 S.W.2d at 387; TEX.R.CRIM.EVID. 404(b).

■ A review of the record indicates that the portion of the identification card labeling appellant as a Texas Department of Corrections inmate had no separate relevance and was not used to establish appellant's identity as the individual robbing the store. The probative value of this evidence did not depend on the inclusion of the information identifying appellant as a criminal, and thus it was irrelevant for this case. We find that the trial court erred in admitting the unredacted identification card because the only value to admitting the portion of the card labeling appellant as an inmate was to prejudice the jury against him.

■ Even though we have found error, it is true that when evidence containing the extraneous offense is improperly admitted during the State's case-in-chief, subsequently admitted evidence can render the error harmless. *Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex.Crim.App.1985). We further note that an instruction to disregard can also cure an error unless the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing its impression on the jury. *Crawford v. State*, 603 S.W.2d 874, 876 (Tex. Crim.App.1980).

Because we find the trial court erred when admitting the unredacted identification card, we must now determine if the error was cured either by subsequent evidence or by the court's instruction. If we find that it was not, TEX.R.APP.P. 81(b)(2) and case law mandate that we reverse the judgment under review unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *Fuller*, 827 S.W.2d at 926–27; *Harris v. State*, 790 S.W.2d 568, 588 (Tex.Crim.App.1989); TEX. R.APP.P. 81(b)(2).

■ We find that the error was not cured by any subsequently unobjected-to evidence, as there was none. Neither was the error cured by the instructions given by the court in the jury charge.[1] This is because the evidence was clearly calculated to inflame the minds of the jury to the extent that the charge could not withdraw the impression the evidence made upon the jury.

Since we find the error was not cured, we must now isolate the error and its effects by using the considerations set out by the Court of Criminal Appeals and any other considerations suggested by the facts of this case. *Fuller*, 827 S.W.2d at 926–27; *Harris*, 790 S.W.2d at 588. Looking at the entire record in a neutral, impartial, and even-handed manner, we must reverse unless we conclude beyond a reasonable doubt that the error did not contribute to the conviction. *Fuller*, 827 S.W.2d at 926–27; *Harris*, 790 S.W.2d at 588; *Weatherred v. State*, 833 S.W.2d 341, 356 (Tex. App.—Beaumont 1992, pet. filed); TEX. R.APP.P. 81(b)(2).

The State urges us to follow our decision in *Escobar*, wherein we found that it was not error to admit the defendant's parole discharge papers and his TDC identification card. 825 S.W.2d at 257. However, *Escobar* is distinguishable from this case. In *Escobar*, significant portions of the parole papers and identification card were redacted in an attempt to limit their prejudicial nature. *Id.* Additionally, when the evidence was admitted, the trial court permitted the evidence only for the limited purpose of establishing identity. *Id.* at 256–57. Further, we found that defendant had not made a rule 403 objection for the court to consider. *Id.* at 257.

---

1. The charge read, in pertinent part, "You are instructed that certain evidence was admitted before you in regard to the defendant's having been charged or convicted of an offense or offenses other than the one for which he is now on trial. Such evidence cannot be considered by you against the defendant as any evidence of guilt in this case."

Even though it could be argued that the facts of this case would support introduction of the redacted identification card for identification purposes, that did not occur. The trial court did not redact any portion of the identification card. Moreover, the prosecution did not use the evidence for the limited purpose of establishing identity, but rather to highlight appellant's status as an inmate. In addition, the court had a timely Rule 403 request before it for consideration.

Applying the standard articulated by the Court of Criminal Appeals, we cannot conclude beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See Harris,* 790 S.W.2d at 588. The State's evidence consisted of one fingerprint on a quart-sized beer bottle found at the scene of the robbery and the clerk's identification of appellant as the robber. There was testimony that other, unidentifiable prints were on the beer bottle. It is possible that, without the evidence branding appellant as a criminal, the jury could have concluded that appellant handled the bottle at some other, earlier time when he was with one or more of the passengers in the robber's automobile. Additionally, there was a discrepancy between the clerk's description and appellant's appearance, and it is possible this would have been sufficient to present a reasonable doubt, forestalling conviction.

Appellant's point of error is sustained.

The judgment of the trial court is reversed, and this case is remanded for a new trial.