Opinion Issued December 11, 2003
















     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01155-CR




KENNY CARL LEWIS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 872749






MEMORANDUM OPINION

          Appellant, Kenny Carl Lewis, was charged with and pleaded not guilty to
possession of a controlled substance, cocaine, weighing more than four grams and
less than 200 grams. A jury found appellant guilty. After appellant pleaded true to
two enhancement paragraphs—felony delivery of a controlled substance and felony
possession of a controlled substance—the trial court assessed his punishment at 30
years’ confinement. In five points of error, appellant (1) challenges the legal and
factual sufficiency of the evidence and (2) contends the trial court erred in admitting
a Texas Department of Criminal Justice identification card into evidence because its
probative value was substantially outweighed by its prejudicial effect. We affirm. 
Background
          During the afternoon of March 26, 2001, prior to the execution of a search
warrant, Officer Wiltz surveyed appellant’s 12209 Myrtle residence in Crosby, Texas. 
Appellant was outside speaking with a Harris County deputy about an unrelated
matter. While appellant was still outside, several other officers executed the search
warrant. After the officers detained appellant and another unknown male, and
secured the residence, the officers entered the home. 
          After the officers’ initial search of the home, Deputy Foose with the canine unit
of the Harris County Sheriff’s Department was called in to “run his dog on the house”
to search for narcotics. Rudy, Deputy Foose’s drug certified dog, first “alerted”
Foose to a bedroom. In the bedroom, Foose and Rudy found a gray shoe box beside
the bed. Inside the box was a red “Swisher Sweets box” containing marijuana,
“Swisher cigars,” used to make marijuana joints, and miscellaneous documents. 
Additionally, in the same bedroom, Rudy “alerted” Foose to an entertainment stand.
On the bottom shelf of the stand was a “crack cocaine cookie”on a “saucer plate”and
a razor blade lying beside it. 
          Detective Porter also went into the home to recover narcotics. Porter recovered
the gray shoe box containing marijuana, a miniature scale used to weigh marijuana,
and other miscellaneous documents, including a bank statement, identification cards
and a temporary driver’s license. The bank statement bore appellant’s name, his
account number, and a Post Office Box address located in Crosby, Texas. Porter also
found two identification cards in the gray box in the bedroom where the cocaine was
found. One identification card was from the Texas Department of Criminal Justice
Institutional Division. On the card were the name, birth date, and picture of
appellant, with the word “inmate” printed in red across the face of the card. The other
identification card was for the Houston Area Contractors’ Safety Counsel, with
appellant’s name and social security number printed on it. Porter also recovered a
paper copy of a temporary permit issued by the Department of Public Safety. The
permit contained appellant’s name, his 12209 Myrtle address, a driver’s license
number and code, the expiration date, and the issuing date of March 21, 2001, five
days prior to the execution of the search warrant. 
          On the entertainment stand, Porter recovered a razor blade, the “saucer plate”
with a “crack cookie,” and another bank statement. This bank statement was from
Crosby State Bank addressed to appellant at a Crosby Post Office Box and reflected
that the statement was through March 5, 2000. Porter testified that the room where
the cocaine was found contained a bed, stereo speakers, and clothes that appeared to
be appellant’s size. Porter also recovered a small amount of marijuana from another
bedroom in the home. 
          On cross-examination, Detective Porter provided contradictory testimony as
to the location of the narcotics. Porter first testified that the cocaine on the
entertainment stand was found in the same bedroom as the marijuana and
miscellaneous documents found in the gray shoe box. Later, during cross-examination, he testified that he recovered the gray box in a different bedroom. 
Although he confirmed that marijuana was found in two separate rooms, he was
unclear as to the room in which he found the miscellaneous documents, including the
bank statement, the identification cards, and the temporary permit. Porter recalled
that one bank statement was found on the entertainment stand, and he believed that
the other bank statement was also found with the cocaine, “because that’s where most
of the documents were found.” Later, Porter reiterated that the three identification
cards—the Contractors’ Safety Counsel card, the Texas Department of Criminal
Justice card, and the temporary driver’s license permit—were found in the room
where the cocaine was located. 
          Officers did not attempt to lift fingerprints from any of the evidence collected
at the residence. The contraband, however, was submitted to the laboratory, which
confirmed that it was cocaine weighing 18.1 grams and marijuana weighing 0.67
ounces. The parties stipulated to the weight and identification of the contraband. Discussion
Sufficiency of the Evidence
          In his first four points of error, appellant contends there is insufficient evidence
to support his conviction. In points one through three, appellant argues that the
evidence is legally insufficient because the evidence (1) “fails to show an affirmative
link between appellant and the controlled substance” and (2) “fails to show appellant
had knowledge of the controlled substance.” In his fourth point of error, appellant
asserts that the evidence is factually insufficient because the “evidence fails to place
appellant in possession of the contraband.” 
          In reviewing a claim of legal insufficiency, we view the evidence in a light
most favorable the verdict to determine whether any rational fact finder could have
found the essential elements of the crime beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Valencia v. State, 51 S.W.3d 418, 423
(Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). We resolve any inconsistencies
in the evidence in favor of the verdict. See Curry v. State, 30 S.W.3d 394, 406 (Tex.
Crim. App. 2000). We are not permitted to substitute our judgment for that of the
jury. King, 29 S.W.3d at 562. 
          In reviewing factual sufficiency, we examine all the evidence neutrally and ask
whether the proof of guilt is so obviously weak as to undermine confidence in the
jury’s determination or so greatly outweighed by contrary proof as to indicate that
a manifest injustice has occurred. Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim.
App. 2003); King, 29 S.W.3d at 563. While conducting our analysis, if there is
probative evidence supporting the verdict, we must avoid substituting our judgment
for that of the trier-of-fact, even when we disagree with the determination. King, 29
S.W.3d at 563. The trier-of-fact is the sole judge of the weight and credibility of the
witness testimony. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
          Under the law applicable to this case, to establish unlawful possession of a
controlled substance, the State must prove (1) that the accused exercised care, control,
custody or management over the contraband and (2) that he knew the matter
possessed was contraband. Tex. Health & Safety Code Ann. §§ 481.002, 481.115
(Vernon 2003); Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995);
Reynolds v. State, 981 S.W.2d 926, 928 (Tex. App.—Houston [1st Dist.] 1998, no
pet.). Possession of the contraband need not be exclusive. Harrison v. State, 555
S.W.2d 736, 737 (Tex. Crim. App. 1977). Mere presence at a place where the
substance is possessed does not, in itself, justify a finding of possession. Id. Where
the accused is not in exclusive control over the contraband, the State must
affirmatively link the defendant with the drugs. Brown, 911 S.W.2d at 747; Cude v.
State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). Affirmative links demonstrate that
the defendant was conscious of his connection with the contraband and knew what
it was. Brown, 911 S.W.2d at 747. Circumstantial evidence is sufficient to prove
possession as long as the evidence affirmatively links the accused to the contraband
by showing that his connection with it was more than fortuitous. Id. 
          Affirmative links are “those secondary facts that indicate the accused’s
knowledge and control of the contraband.” Martinets v. State, 884 S.W.2d 185, 188
(Tex. App.—Austin 1994, no pet.). Affirmative links are established by a totality of
the circumstances. Hyett v. State 58 S.W.3d 826, 830 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d). The factors that establish affirmative links include whether
(1) the defendant was present when the drugs were found; (2) the contraband was in
plain view; (3) the defendant was in proximity to the drugs and had access to them;
(4) the defendant was under the influence of drugs when arrested; (5) the defendant
possessed other contraband; (6) the defendant made incriminating statements when
arrested; (7) the defendant attempted to flee; (8) the defendant made furtive gestures;
(9) there was an odor of drugs; (10) the defendant owned or had the right to possess
the place where the drugs were found; (11) the drugs were found in an enclosed
place; (12) the amount of drugs found was significant; (13) the defendant possessed
weapons; and (14) the defendant possessed a large amount of cash. Hurtado v. State,
881 S.W.2d 738, 743 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). None of
these factors are necessarily determinative; when examining the affirmative links, the
number of factors present is not as important as the logical force they have in
establishing the offense and the degree to which they, alone or together, tend to
affirmatively link the accused to the drug. Id.; Gilbert v. State, 874 S.W.2d 290, 298
(Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). The evidence need not exclude
every reasonable hypothesis other than the defendant’s guilt, but it must show facts
and circumstances that demonstrate the defendant’s knowledge and control of the
contraband. Brown, 911 S.W.2d at 748. 
          Viewed in the light most favorable to the verdict, the evidence in this case
establishes affirmative links that raise reasonable inferences of appellant’s knowledge
and control of the cocaine. First, appellant was present at the house when it was
searched. Although appellant disputes owning the home, Detective Porter testified
that clothing in the room where the narcotics were found “appeared to be the same
size as appellant.” See Pigg v. State, 760 S.W.2d 330 (Tex. App.—Beaumont 1988,
no pet.) (clothes that fit the defendant were found in the closet where drugs were
seized). There was also evidence establishing appellant’s occupancy of the premises. 
See Villegas v. State, 871 S.W.2d 894, 897 (Tex. App.—Houston [1st Dist.] 1994,
pet. ref’d). Several pieces of identification were located in the bedroom where the
cocaine was discovered: a Contractors’ Safety identification card in appellant’s name,
a Texas Department of Criminal Justice identification card bearing appellant’s name
and picture, and a temporary driver’s permit issued five days prior to the search
warrant and listing 12209 Myrtle as appellant’s residence. Two bank statements were
also recovered from the room where the contraband was found. In the box
containing marijuana, there was a bank statement from 1999 bearing appellant’s name
and account information. On the entertainment stand where the cocaine was found,
Porter recovered a bank statement in appellant’s name from 2000. See Herrera v.
State, 561 S.W.2d 175 (Tex. Crim. App. 1978) (letters addressed to the defendant
were in the apartment where contraband was found). 
          The cocaine was also easily located. Once Rudy “alerted” to the entertainment
stand, Foose kneeled down and saw, on the bottom shelf of the stand, an obvious
“crack cocaine cookie” on a “saucer plate” with a razor blade lying beside it. 
Furthermore, the amount of cocaine found in appellant’s room was significant—more
than four grams, an amount large enough to indicate the accused knew of its
existence. See Carvajal v. State, 529 S.W.2d 517, 520 (Tex. Crim. App. 1975). 
Finally, appellant possessed other contraband. Officers also recovered additional
drugs and paraphernalia inside the room where the cocaine was discovered, including
a razor blade, which Foose testified was used to cut up the cocaine, marijuana, and
cigars used to make marijuana joints. Viewed in the light most favorable to the
prosecution, the evidence is legally sufficient to support the jury’s finding that
appellant possessed cocaine. 
          In support of his factual sufficiency argument, appellant argues that “the court
should assess the credibility of the two officers who entered the house and testified
for the State.” Credibility and the weight to be given evidence are for the jury, not for
this court. Johnson, 23 S.W.3d at 7. Here, appellant presented no testimony or
evidence. He contends rather that “without Foose’s testimony virtually no connection
to appellant exists,” particularly in light of Porter’s testimony. We must show
deference to the jury finding. Cain v. State, 958 S.W.2d 404, 409 (Tex. Crim. App.
1997). Viewing the evidence neutrally, we find that the jury could have reasonably
concluded from the evidence that appellant possessed cocaine. A jury decision is not
manifestly unjust merely because the jury resolved conflicting testimony in favor of
the State. Id. at 410. We hold that the evidence was factually sufficient to support
the jury’s finding that appellant was guilty of possession of cocaine. 
          We overrule appellant’s first four points of error. 
Identification Card
          In his fifth point of error, appellant argues that the trial court erred in admitting
into evidence a Texas Department of Criminal Justice (TDCJ) inmate identification
card over his objection that its probative value was outweighed by the prejudicial
effect. Appellant contends that the admission of the TDCJ card amounted to
extraneous misconduct evidence, which “had an enormous potential to impress the
jury in an irrational and indelible manner.” Although appellant objected to both
relevancy and prejudice at trial, on appeal appellant challenges only the admission of
the TDCJ identification card, on the ground that its prejudicial effect outweighs its
probative value. 
          Rule 403 of the Texas Rules of Evidence governs the exclusion of relevant
evidence on special grounds. Rule 403 provides that “[a]lthough relevant, evidence
may be excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury, or by considerations
of undue delay, or needless presentation of cumulative evidence.” Tex. R. Evid. 403.
Once a defendant objects to evidence on the basis of Rule 403, the trial court must
weigh the probative value of the evidence against its potential for unfair prejudice. 
Rule 403 favors admissibility and contains a presumption that relevant evidence will
be more probative than prejudicial. Hayes v. State, 85 S.W.3d 809, 815 (Tex. Crim.
App. 2002); Montgomery v. State 810 S.W.2d 372, 376 (Tex. Crim. App. 1990). A
trial court has broad discretion to admit or exclude evidence. Montgomery, 810
S.W.2d at 390. This Court will reverse only upon a clear abuse of discretion, i.e.,
only when the trial court’s decision was outside the zone of reasonable disagreement. 
See id. at 390-91. 
              The Texas Department of Criminal Justice (TDCJ) identification card, State’s
exhibit 14, contained a photo of appellant, his birth date, and the word inmate in large
red letters across the card. Appellant argues that the exhibit “had almost no probative
value.” However, the record reveals that the TDCJ card was relevant and probative
because it helped establish a link between appellant and the contraband. Appellant
was charged with possession of cocaine, and thus, the State had the burden of
proving, as an element of the offense, that appellant exercised control of the
substance and that he knew the substance was contraband. The State did so in part
by showing that the TDCJ card, along with other identification cards and paperwork,
was found in the same room as the cocaine. Not only was the TDCJ card probative
and relevant to help link appellant to the drugs, it also rebutted appellant’s defensive
theory that he did not reside at the house. 
          In Ecby v. State, 840 S.W.2d 761 (Tex. App.—Houston [1st Dist.] 1992, pet.
ref’d), this Court held that a trial court erred in admitting into evidence a Texas
Department of Corrections identification card. The card was found in the appellant’s
glove compartment after a robbery was committed and was used only in a lineup to
establish the appellant as the robber. The court held that the inmate card had no
separate relevance other than tending to show character conformity and, without
additional relevance, the evidence was inadmissible. The court found that the inmate
card was not used to establish appellant’s identity as the individual robbing the store
and therefore it was irrelevant for the case. Id. 
          In the present case however, the evidence establishes an element of the crime
charged, by affirmatively linking appellant to the drugs to establish that appellant had
possession. See Montgomery, 810 S.W.2d at 387 (if the evidence establishes an
element of the crime charged, it may be sufficient to give the evidence additional
relevance). Therefore, unlike in Ecby, the identification card has additional relevance
than merely showing that appellant was an inmate. See Escobar v. State, 825 S.W.2d
254, 256 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d). The TDCJ card was
highly probative in linking appellant to the contraband. Although other identification
cards and documents in the name of appellant were present in the same room as the
TDCJ card and the cocaine, in order to show unlawful possession, circumstantial
evidence must affirmatively link the accused to the contraband by showing his
connection with it was more than fortuitous. Brown, 911 S.W.2d at 747. 
          Furthermore, although the TDCJ identification card also suggested that
appellant had engaged in extraneous misconduct, the State did not focus on this point. 
Nor did the State use the TDCJ card to inflame the minds of the jury or to prejudice
the jury against the appellant. Although the TDCJ card was not redacted, it did not
state the crime for which appellant was convicted or the date of his conviction. The
testimony concerning the card was brief and only in the context of what forms of
identification were found in the residence. Also, during the State’s closing argument,
the identification card was only briefly discussed.
          After considering all the facts and circumstances of the case, we cannot
conclude that the trial court erred by determining the probative value of the TDCJ
identification card was not substantially outweighed by any unfair prejudice. We
overrule appellant’s fifth point of error. 
Conclusion
          We affirm the judgment. 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Nuchia, and Keyes.
Do not publish. Tex. R. App. P. 47.2(b).